Lisa M. Schweitzer, Esq.
Jane VanLare, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the Foreign Representative of SMP Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
In re:                                                                    :
                                                                             :
                                                                             :   Chapter 15
SMP Ltd.                                                              :
                                                                             :   Case No. 17-_____ ( )
                               Debtor in a Foreign Proceeding   :
                                                                             :
------------------------------------------------------------ X

**DECLARATION OF HEEIN LEE IN SUPPORT OF VERIFIED**
**PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN**
**MAIN PROCEEDING, AND OTHER RELIEF AND FIRST DAY PLEADINGS**

I, Heein Lee, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as

follows:

1.      I am over the age of 18 and, if called upon, could testify to all matters set forth in

this statement, except for those portions specified as being otherwise.

2.      I am the Representative Director and, as set forth below, custodian and foreign

representative of SMP Ltd. ("SMP") in SMP's proceeding (case number "2016HoeHap507

Rehabilitation") (the "Korean Bankruptcy Proceeding") under the Republic of Korea's Debtor

Rehabilitation and Bankruptcy Act (as amended, the "DRBA") pending before the 21st Civil

Division of the Ulsan District Court (the "Korean Bankruptcy Court").

3.      I submit this declaration (the "Declaration") in support of the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* (together with the *Official Form Petition* filed contemporaneously herewith, the "Petition")[1] and the *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for Order Scheduling Hearing and Specifying Form and Manner of Service of Notice, and Granting Related Relief* (the "Notice Procedures Motion") (collectively, the "First Day Pleadings").

4.      I make this declaration on the basis of documentation I have reviewed and facts known to me through my work as Representative Director, custodian and foreign representative of SMP.  Where relevant information has been provided to me by others, the information is true to the best of my knowledge and belief.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

A.      **Capital Structure of SMP and Overview of its Business[2]**

5.      SMP is a Korean stock corporation originally formed in 2011 as a 50-50 joint venture between SunEdison Products Singapore Pte. Ltd. (formerly known as MEMC Singapore Pte. Ltd.) ("SPS") and LOTTE Fine Chemical Co., Ltd. (formerly known as Samsung Fine Chemical Co., Ltd.) ("LFC").  SPS now holds an approximately 65.25% equity interest in SMP following LFC's sale of a portion of its shares.  SMP is organized under the laws of the Republic of Korea, with a registered address at 18 Yeocheon-ro 217beon-gil, Nam-gu, Ulsan, Republic of Korea.

---

[1]     All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Petition.

[2]     The complete history and background of SMP is detailed in the *Application for Commencement of Rehabilitation Proceedings* (the "Korean Application") filed with the Korean Bankruptcy Court.  An English translation of the Korean Application is attached as **Exhibit A** to this Declaration.  The background contained herein is summary in nature only.  Parties should refer to the Korean Application for further detail.

6.      SMP's primary business is the development, manufacture, commercialization,

distribution and sale of polysilicon.  Polysilicon is a core raw material used in solar cells, making

it integral to solar energy generation.

7.      SMP currently has outstanding 10,162,000 shares of common stock which are

owned by the following entities in the percentages reflected:

| Name of Entity | Percentage of Outstanding Stock Owned |
|---|---|
| SunEdison Products Singapore Pte. Ltd. | 65.25% |
| Taisil Electronic Materials Corporation | 19.60% |
| Lotte Fine Chemical Co., Ltd. (formerly, Samsung Fine Chemicals Co., Ltd.) | 15.00% |
| SunEdison Semiconductor B.V. | 0.15% |

8.      The    total    amount    of    SMP's    debt    as    of    March    31,    2016    was

KRW513,111,465,057, or approximately $450,548,324.69.[3]  Of this, KRW388,968,137,433, or

approximately  $341,541,662.22,[4]  consisted  of  secured  claims,  including  loans  from  several

financial institutions secured with first-priority mortgages over SMP's real property and plant

assets.  The remainder of SMP's debt consisted of various general unsecured claims.  At the time

of the filing of the Korean Application, SMP had eight directors and officers, including

one Representative Director, six Internal Directors (including the Representative Director) and

two Statutory Auditors, as well as 124 non-unionized employees.

9.      SMP's production and sale of polysilicon is governed by a series of agreements

by and between SMP and certain SunEdison entities, including SunEdison, Inc. (formerly known

---

[3]      USD conversion was calculated using a USD/KRW exchange rate of KRW1,138.86 = $1, the Federal
Reserve USD/KRW rate as of March 31, 2016.

[4]      USD conversion was calculated using a USD/KRW exchange rate of KRW1,138.86 = $1, the Federal
Reserve USD/KRW rate as of March 31, 2016.

as MEMC Electronic Materials, Inc.) ("SunEdison").    Under these agreements, both the

equipment necessary to produce polysilicon and the technology needed to operate that equipment

are sold or provided by SunEdison.    The agreements also govern certain ancillary services

provided by the SunEdison entities to SMP in connection with SMP's use of the equipment to

manufacture polysilicon.    Specifically, SMP entered into the following agreements with the

SunEdison entities:[5]

- Supply and License Agreement, dated as of September 28, 2011, by and between SunEdison and SMP (the "2011 SLA").  Pursuant to the 2011 SLA, SunEdison agreed to sell SMP certain fluidized bed reactor ("FBR") equipment and provide an exclusive license in Korea to use certain technology necessary for the "full-scale commercial design, construction and operation of a polysilicon manufacturing facility."  The 2011 SLA contains a number of restrictions with respect to the equipment and technology and contemplates that SunEdison will provide a number of services in connection with such equipment and technology. As described in further detail below, SunEdison sent SMP a notice of termination, dated March 30, 2017, purporting to terminate the 2011 SLA.

- Reactor Internal Stack Consumable Supply Agreement, dated as of September 28, 2011, by and between SunEdison and SMP (the "Stack Agreement").  Pursuant to the Stack Agreement, SunEdison agreed to sell and deliver to SMP certain "reactor internals, which consist of a combination of high temperature carbon materials and proprietary insulation materials."    On March 31, 2017, the Chapter 11 Court (as defined below) issued an order pursuant to which the Stack Agreement was rejected.

- Polysilicon Supply Agreement, dated as of February 27, 2015, by and between SMP and SPS (the "PSA").  Pursuant to the PSA, SPS agreed to purchase 65% of all polysilicon products produced by SMP.  On May 11, 2016, the Chapter 11 Court (as defined below) issued an order pursuant to which the PSA was rejected *nunc pro tunc* to April 21, 2016.

- Supply and License Agreement, dated as of March 9, 2016, by and between SunEdison and SMP (the "2016 SLA," and together with the 2011 SLA, the Stack Agreement and the PSA, the "SunEdison Agreements).  Pursuant to the 2016 SLA, SunEdison agreed to sell SMP certain equipment (or direct SMP to another vender) and license technology to produce "polysilicon seeds required as a

---

[5]    Due to the sensitive nature of certain of the information contained therein, copies of the agreements referenced in this Declaration are not attached hereto.  Should it become necessary to adjudicate the issues raised in this Declaration, SMP will provide copies of such agreements to the Court and other parties in interest, as appropriate.

feedstock for polysilicon production via the FBR process." The 2016 SLA contains restrictions on the use of the technology and equipment and contemplates that SunEdison will provide certain technical support services in relation to the equipment and technology. SunEdison sent SMP a notice of termination, dated March 30, 2017, purporting to terminate the 2016 SLA.

10.     SMP has substantial interests in the United States. It holds property in New York in the forms of claims against SunEdison and certain of its affiliates, as evidenced by certain proofs of claim filed in the SunEdison Chapter 11 Proceedings (as defined below) seeking payment for various breaches of the SunEdison Agreements. These breaches are described in more detail below and in the Korean Application. Additionally, Cleary Gottlieb Steen & Hamilton LLP holds a certain unused retainer from SMP in New York in connection with certain legal services retained in respect of the purported termination of the 2011 SLA and the Chapter 15 Case.

**B.     Events Leading to the Korean Bankruptcy Proceeding**

11.     Pursuant to the terms of the 2011 SLA, SMP acquired from SunEdison an exclusive license to use certain polysilicon manufacturing technology (the "License"), as well as certain equipment to produce polysilicon (together with the License, the "SLA Materials"). Pursuant to its section 11.9, the 2011 SLA is governed by "the laws of the [s]tate of New York and the Federal laws of the United States applicable thereto."

12.     In exchange for the SLA Materials, SMP agreed to pay SunEdison a license fee of $40 million (the "License Fee") and an equipment fee of $219 million (the "Equipment Fee") in accordance with and subject to the terms of the 2011 SLA. SMP timely paid the License Fee in full. SMP also paid $174 million of the Equipment Fee. SMP withheld the remainder of the Equipment Fee as a result of SunEdison's failure to meet its performance guarantee obligations under the 2011 SLA.

13.     Section 8.2 of the 2011 SLA contains various termination provisions, including

the *ipso facto* clause contained in section 8.2(a)(ii) (the "Ipso Facto Clause"), which states in

relevant part that either party to the 2011 SLA may terminate the agreement if the other party

"(A) . . . files or commences a proceeding for the liquidation, bankruptcy, receivership,

reorganization, rehabilitation, composition or dissolution of such other party . . . or (B) such

other [p]arty is unable to pay or has suspended payment of its debts generally as they become

due."

14.     The plant where SMP was to manufacture polysilicon using the SLA Materials

(the "Ulsan Plant") is essentially SMP's sole tangible asset and was designed specifically and

solely to produce polysilicon using the SLA Materials.   Under the terms of the 2011 SLA,

SunEdison guaranteed that the Ulsan Plant would meet certain production metrics related to the

production of polysilicon (as defined in the 2011 SLA, the "Performance Guarantees").

15.     Pursuant to the PSA, SPS agreed to purchase at least 65% of the polysilicon

manufactured at the Ulsan Plant.   In fact, SPS subsequently purchased nearly all of the

polysilicon produced by SMP at the Ulsan Plant.

16.     SunEdison failed to meet certain of the Performance Guarantee metrics contained

in the 2011 SLA.  As a result of this failure, as permitted under the terms of the 2011 SLA, SMP

withheld $45 million of the Equipment Fee.

17.     SPS also failed to honor its obligations under the PSA by repeatedly failing to pay

the invoices SMP issued on account of the polysilicon it delivered to SPS.  As of April 2016,

52 separate invoices, reflecting SMP's delivery of more than 3,400 metric tons of polysilicon

products to SMP and totaling $60,336,482.02 in principal and accrued interest, remained unpaid.

6

18.    Additionally, the construction and commercialization of the Ulsan Plant was delayed, due largely to SunEdison's failure to timely supply certain components pursuant to the Stack Agreement that were essential to the Ulsan Plant's operations.  In combination with other factors, SunEdison's failure to supply these components delayed completion of the Ulsan Plant's construction by more than a year from the originally scheduled target date of September 2013. This delay also increased the required capital expenditure from an anticipated amount of KRW820 billion, or $718,982,902.24,[6] to KRW964 billion, or $845,243,314.34.[7]

19.    As of April 2016, SPS had paid virtually none of the outstanding amounts owed to SMP under the PSA.  Meanwhile, SunEdison had failed to meet the Performance Guarantees under the 2011 SLA.  These failures and breaches caused SMP to shut down production at the Ulsan Plant.

20.    On April 21, 2016, SunEdison and SPS, together with certain of their affiliates (collectively, the "SunEdison Debtors"), each commenced a bankruptcy case under chapter 11 of the United States Bankruptcy Code (as jointly administered under Case No. 16-10992 (SMB) before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the Southern District of New York (the "Chapter 11 Court")) (such cases collectively, the "SunEdison Chapter 11 Proceedings").

21.    Following the cessation of its plant's operations in March 2016, and in light of SunEdison's initiation of bankruptcy proceedings, the SunEdison Debtors' failures to honor their contractual obligations to SMP, and their lack of financial support to SMP, SMP determined that

---

[6]    USD conversion was calculated using a USD/KRW exchange rate of KRW1,140.50 = $1, the Federal Reserve USD/KRW rate as of November 2, 2015, approximately when commercial production commenced in the Ulsan Plant.

[7]    USD conversion was calculated using a USD/KRW exchange rate of KRW1,140.50 = $1, the Federal Reserve USD/KRW rate as of November 2, 2015, approximately when commercial production commenced in the Ulsan Plant.

it was necessary to enter rehabilitation proceedings in order to seek court protection under Korean bankruptcy law. As described further below, SMP believed then, and continues to believe, that undergoing the rehabilitation process would allow it to find a suitable purchaser and continue to exist as a viable, globally competitive company.

## C.    The Current Korean Bankruptcy Proceeding

22.    On May 3, 2016, SMP applied for rehabilitation under the DRBA by filing the Korean Application. On May 12, 2016, the Korean Bankruptcy Court entered an order preventing SMP from, *inter alia*, disposing of any assets and repaying any debts (the "Preservation Order") as well as an order preventing any creditor from taking any enforcement, attachment or other action against SMP's assets (the "Comprehensive Stay Order").

23.    The Comprehensive Stay Order and Preservation Order were effective pending the Korean Bankruptcy Court's entry of the order commencing the rehabilitation proceeding and granting me authority to act during the Korean Bankruptcy Proceeding with respect to SMP (the "Commencement Order"), which was issued on June 13, 2016. Also on June 13, 2016, the Korean Bankruptcy Court entered an order delineating my authority to act during the Korean Bankruptcy Proceeding (the "Custodian Authority Order"). On April 27, 2017, the Korean Bankruptcy Court entered an order specifically authorizing the filing of the Chapter 15 Case (the "Chapter 15 Authorization Order"), and explicitly empowering me to represent SMP in the Chapter 15 Case.

24.    Upon entry of the Commencement Order, and in accordance with Articles 74(3), 74(4) and 640 of the DRBA, I, as custodian of SMP, have the power to conduct all of SMP's business, manage all of its property, and carry out relevant activities overseas for Korean

8

bankruptcy purposes and procedures, all under the conditions prescribed by the relevant foreign legislation, subject to the Korean Bankruptcy Court's supervision.

25.      Accordingly, I am authorized to act as a "foreign representative" of SMP in the Chapter 15 Case. Certified copies of the Comprehensive Stay Order, Preservation Order, Commencement Order, Custodian Authority Order and the Chapter 15 Authorization Order, in English translation, are attached to the Declaration as **Exhibit B**, **Exhibit C, Exhibit D**, **Exhibit E and Exhibit F**, respectively.

**D.      SunEdison's Attempted Termination of the 2011 SLA**

26.      On August 26, 2016, after the commencement of the Korean Bankruptcy Proceeding, the SunEdison Debtors filed a motion (the "Sale Motion")[8] for an order approving, *inter alia*, the sale of SunEdison's Solar Materials Business (as defined in the Sale Motion).  The motion proposed the sale of, among other things, SPS's ownership interest in SMP.  The Sale Motion also sought approval of an agreement (the "Stalking Horse Agreement") which contemplated the sale of the Solar Materials Business to GCL-Poly Energy Holdings Limited ("GCL").

27.      Article 6.1(a)(vi) of the Stalking Horse Agreement ("Article 6.1") required SunEdison to reject the 2011 SLA, to "take such actions in Korea or the United States as [GCL] may reasonably request to terminate the [2011 SLA] (including exercising [its] contractual rights, pursuant to and in accordance with the terms and conditions of [the 2011 SLA])," and to

---

[8]      Notice of Debtors' Mot. for (I) an Order (A) Approving the Bidding Procedures for the Sale of the Solar Materials Business, (B) Establishing the Notice Procedures and Approving the Form and Manner of Notice thereof, (C) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Scheduling a Sale Hr'g, and (E) Granting Related Relief and (II) an Order (A) Approving the Sale of the Solar Materials Business Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related thereto, and (C) Granting Related Relief, *In re SunEdison, Inc., et al.*, No. 16-10992 (SMB), Dkt. No. 1072 (Bankr. S.D.N.Y. Aug. 26, 2016).

exercise any rights under the 2011 SLA to recover from SMP "all proprietary information, technology, equipment and other licensed assets" provided to SMP through the 2011 SLA. Article 6.1 also stated that, notwithstanding the foregoing, SunEdison was not obligated to take "any action in breach of any applicable [l]aw."

28.     On October 17, 2016, SMP filed a reservation of rights in connection with the proposed sale of the Solar Materials Business (the "SMP Sale Objection").[9] The SMP Sale Objection objected to the proposed sale because, *inter alia*, SunEdison's obligations under Article 6.1—including the obligation to recover from SMP "all proprietary information, technology, equipment and other licensed assets"—improperly attempted to abrogate SMP's ability to make an election to retain the License pursuant to 11 U.S.C. § 365(n) in the event SunEdison attempts to reject the 2011 SLA.[10]

29.     On October 25, 2016, the Chapter 11 Court entered an order approving the Sale Motion and Stalking Horse Agreement and adjourning the SMP Sale Objection.[11] Even after the Stalking Horse Agreement was approved by the Chapter 11 Court, more than four months after the commencement of the Korean Bankruptcy Proceeding, SunEdison did not attempt to terminate the 2011 SLA.

30.     On February 6, 2017, the Chapter 11 Court entered an order assigning to mediation the dispute regarding the sale of the Solar Materials Business and directing the

---

[9]     SMP Ltd.'s Reservation of Rights in Connection with the Debtors' Sale of the Solar Materials Business Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, *In re SunEdison, Inc., et al.*, No. 16-10992 (SMB), Dkt. No. 1405 (Bankr. S.D.N.Y. Oct. 17, 2016).

[10]    For the avoidance of doubt, SMP expressly reserves its rights as to whether the SLA can be rejected under applicable law.

[11]    Order (I) Authorizing the Sale of the Solar Materials Business Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief, *In re SunEdison, Inc. et al.*, No. 16-10992 (SMB) Dkt. 1466 (Bankr. S.D.N.Y. Oct. 25, 2016).

SunEdison Debtors, SMP and GCL to attend an in-person mediation on February 27, 2017 (the "Mediation").[12]

31.    The Mediation did not finally resolve all disputes among the SunEdison Debtors, SMP and GCL.  Rather, on March 28, 2017, as a result of the Mediation, the Chapter 11 Court entered an order approving a settlement agreement resolving the SMP Sale Objection (the "Settlement Agreement") that sets forth procedures by which SunEdison's right to either terminate the 2011 SLA or alternatively to reject the 2011 SLA, and the consequences thereof, would be fully determined.[13]  Under paragraph 7 of the Settlement Agreement, the parties thereto agreed that SunEdison would send a notice terminating the 2011 SLA in accordance with the terms of the SLA, provided that SunEdison, GCL and SMP "acknowledge and agree that SMP's rights to contest and challenge [SunEdison's] rights to terminate [the 2011 SLA] are hereby fully preserved."  (emphasis added).

32.    The parties to the Settlement Agreement agreed that SMP could challenge the termination by initiating the challenge no later than 30 days after later of (i) SMP's receipt of a settlement-related payment from the SunEdison Debtors or (ii) SMP's receipt of written notice of termination of the 2011 SLA from the SunEdison Debtors.  The parties further agreed that any dispute arising from or related to the termination of the 2011 SLA shall, at SMP's election, be (i) brought before the Chapter 11 Court or (ii) submitted to arbitration in accordance with the terms of the 2011 SLA.  Further, under the Settlement Agreement, if SMP successfully challenges SunEdison's attempted termination of the 2011 SLA, SunEdison is obligated to attempt to reject the 2011 SLA pursuant to 11 U.S.C. § 365(a), after which SMP may seek to

---

[12]    Order Assigning Matter to Mediation, *In re SunEdison, Inc. et al.*, No. 16-10992 (SMB) Dkt. 2406 (Bankr. S.D.N.Y. Feb. 6, 2017).

[13]    Stipulated Order Approving Settlement Agreement, *In re SunEdison, Inc. et al.*, No. 16-10992 (SMB), Dkt. No. 2657 (Bankr. S.D.N.Y. Mar. 28, 2017).

elect to avail itself of the rights provided for in 11 U.S.C. § 365(n). In establishing these procedures, the parties agreed that time is of the essence in resolving the dispute.

33.      As contemplated by the Settlement Agreement's dispute resolution procedures, SunEdison transmitted a notice of termination pursuant to the Ipso Facto Clause, dated March 30, 2017 (the "Termination Notice"), to SMP one day prior to the closing of the Solar Materials Business sale, over nine months after the commencement of the Korean Proceeding. The Termination Notice purported to terminate the 2011 SLA pursuant to the Ipso Facto Clause "as a result of SMP's pending rehabilitation proceeding and its failure to pay debts generally as they come due." SMP received the Termination Notice in Ulsan, Korea on March 31, 2017 (Korean Standard Time). On April 3, 2017 (Korean Standard Time), an SMP bank account was credited $5 million, which constituted the settlement payment provided for under paragraph 3 of the Settlement Agreement.

34.      Accordingly, SMP may initiate its challenge to SunEdison's termination of the 2011 SLA at any time up to and including May 2, 2017. SMP's position is that SunEdison's attempted termination of the 2011 SLA is invalid because, *inter alia*, the 2011 SLA was an executory contract and therefore, upon the entry of the Commencement Order by the Korean Bankruptcy Court, the Ipso Facto Clause was rendered void and unenforceable against SMP. Therefore, pursuant to the terms agreed to in the Settlement Agreement, SMP intends to seek a declaration that the Ipso Facto Clause is unenforceable against SMP, and the termination of the 2011 SLA is ineffective and invalid, in parallel to this Chapter 15 Case.

35.      SMP believes that if it survives its present liquidity crisis, it will be able to produce products that are competitive in both price and quality. However, delivery of the Termination Notice relying on the Ipso Facto Clause frustrates SMP's ability to rehabilitate its

business.  The 2011 SLA and SMP's rights to use the SLA Materials are essential to SMP's ability to produce polysilicon.  The Ulsan Plant, essentially SMP's sole tangible asset, was specifically designed to produce polysilicon using the SLA Materials and has no other production capabilities.

36.    Because of the importance of the SLA Materials to SMP's business, SunEdison's attempted termination of the 2011 SLA severely hinders SMP's ability to successfully emerge from rehabilitation.  Absent the ability to use the SLA Materials to produce polysilicon, SMP would be forced to liquidate its assets and, even in the event of such liquidation, would be unlikely to have sufficient funds to repay its creditors.  As a result, SMP cannot be rehabilitated under the DRBA if the SLA is terminated pursuant to the Ipso Facto Clause.

E.    **Recognition as a Foreign Main Proceeding**

37.    I believe that the Korean Bankruptcy Proceeding is a "foreign proceeding" as I have been advised that term is defined in Bankruptcy Code section 101(23).  To the best of my knowledge, information and belief, the Korean Bankruptcy Proceeding is a collective judicial proceeding, including an interim proceeding, under a Korean law relating to insolvency or adjustment of debt in which the assets and affairs of SMP are subject to control or supervision by a Korean court, for the purposes of reorganization or liquidation.

38.    Additionally, I believe that the Korean Bankruptcy Proceeding is a "foreign main proceeding" as I have been advised that term is defined in Bankruptcy Code section 1502(4).  SMP's operations are centered in Korea, its registered office is located in Korea, its directors are located in Korea, it is incorporated under the laws of Korea and its employees work in Korea.  The Republic of Korea, where the Korean Bankruptcy Proceeding is venued, is therefore the center of main interests of the Company within the meaning ascribed in Bankruptcy Code section 1516(c).

39.     I have been appointed as the foreign representative of SMP in connection with this Chapter 15 Case by order of the Korean Court.  True and correct copies of the Commencement Order appointing me as custodian and the Chapter 15 Authorization Order empowering me to represent SMP as its foreign representative in the Chapter 15 Case are attached hereto as **Exhibit D** and **Exhibit F**.  As a result, to the best of my knowledge, information and belief, I am a person authorized to administer the reorganization of SMP's affairs and represent SMP in this Chapter 15 Case.  Therefore, I believe that I am a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

40.     As custodian and foreign representative of SMP, I have directed our United States counsel, Cleary Gottlieb Steen & Hamilton LLP, to:  (i) commence this Chapter 15 Case for SMP; (ii) seek recognition of the Korean Bankruptcy Proceeding as a "foreign main proceeding;" and (iii) seek certain related relief.  All certified documents, statements, lists and documents required under chapter 15 of the Bankruptcy Code and the Bankruptcy Rules have been filed contemporaneously herewith.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Seoul, Republic of Korea on April 29 2017

_____
Heein Lee
Custodian and Foreign Representative, SMP Ltd.